UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
TRENT PATTERSON,                      :    16 Civ. 3156 (PAE) (JCF)

              Plaintiff,              :        REPORT AND
                                      :    RECOMMENDATION
      - against -                     :
                                      :
                                      :
JOSEPH PONTE (Commissioner DOC),      :    ┌─────────────────────────────┐
MAXOLAINE MINGO (Warden), CAPTAIN     :    │ USDS SDNY                   │
JOHNSON (Security/Programs), and      :    │ DOCUMENT                    │
C.O. LEWIS (Security),                :    │ ELECTRONICALLY FILED        │
                                      :    │ DOC #:  _____ │
              Defendants.             :    │ DATE FILED:  3/30/17        │
- - - - - - - - - - - - - - - - - - -:    └─────────────────────────────┘
TO THE HONORABLE PAUL A. ENGELMAYER, U.S.D.J.:

     The plaintiff, Trent Patterson, brings this action pursuant

to 28 U.S.C. § 1983 against Joseph Ponte, Commissioner of the New

York City Department of Correction (the "DOC"); Maxolaine Mingo,

warden of the Anna M. Kross Center ("AMKC"); "Captain Johnson";

and "C.O. Lewis." He alleges claims arising from his conditions

of confinement, and he also alleges violations of his right to

access to the courts, right to free exercise of religion, right to

freedom of association, and right to liberty from bodily restraint.

He further asserts that he was unreasonably searched and sexually

assaulted during a strip search.  The defendants have moved to

dismiss the Complaint and the Amended Complaint.[1]  For the reasons

that follow, I recommend that the motion be granted.

_____

     [1] While the Amended Complaint does not re-allege all the
allegations from the initial Complaint, it is clear that the

1

Background

Mr. Patterson claims that while he was detained[2] at the AMKC, his cellblock was frequently locked down for long periods even when the reason for the lockdown was "not in [his] area" and despite "the problem area [being] secured." (Complaint ("Compl.") at 3). As a result, he has been "denied visits, counsel visits, law library, mail, packages, social service legal aid, timely medication, recreation, phone, commissary, showers, t.v., sick call, and barbershop." (Compl. at 3). Furthermore, he has been denied recreation, sick call, and use of the law library because of understaffing. (Amend. Compl. at 2-3; Inmate Grievance and Request Program Statement Form dated Sept. 17, 2016 ("9/17/16 Grievance"), attached as an exhibit to Letter of Trent Patterson filed Sept. 27, 2016). He further alleges that he has been assigned a mattress that is "unfit for human usage," causing him pain. (Compl. at 3). He claims that "[t]he warden[] and commisser [sic] are aware of and responsible for all the above-mentioned constitutional violations." (Compl. at 3).

_____

plaintiff does not intend to abandon his original claims. (Amended Complaint ("Amend. Compl.") at 5).

[2] While no party has indicated whether Mr. Patterson is a pre-trial detainee or a convicted prisoner, I will assume that he is the former, as he would be entitled to somewhat greater constitutional protection.

2

On March 4, 2016, the plaintiff was strip searched by C.O. Lewis in the pantry area of the facility. (Inmate Grievance and Request Program Statement Form dated March 11, 2016 ("3/11/16 Grievance"), attached as an exhibit to Amend. Compl.; Letter of Trent Patterson filed Dec. 28, 2016 ("12/28/16 Patterson Letter"), at 2).[3] The plaintiff claims that during the strip search, he was directed to "squat" several times, but after he was ordered to do so for a fourth time, he refused; C.O. Lewis then "grabbed [his] buttocks and a verbal altercation erupted." (3/11/16 Grievance). Captain Johnson arrived and ordered Mr. Patterson handcuffed, and he was escorted to the receiving room where he was searched and ordered to squat again. (3/11/16 Grievance). No contraband was found. (Notice of Intention to File a Claim, attached as an exhibit to Amend. Compl., ¶ 3).[4] The plaintiff claims that he "[d]idn't do anything to provoke the search or assault." (Letter of Trent Patterson filed Feb. 2, 2017, at 2).

Mr. Patterson states that he filed administrative grievances concerning these allegations and then appealed to the Warden, but received no responses to the appeals. (Compl. at 4; Amend. Compl. at 4).

---

[3] The grievance is attached in the middle of the Amended Complaint.

[4] This document also appears in the middle of the Amended Complaint.

Discussion

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The court's charge in ruling on a 12(b)(6) motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)).  The court must construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

This standard applies equally to pro se plaintiffs, but their pleadings are read more liberally and are construed as raising the strongest claims implied.  See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).  The court may also consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint."

4

<u>Martinez v. Aycock-West</u>, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting <u>Alsaifullah v. Furco</u>, No. 12 Civ. 2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)).

To plead a claim properly under § 1983, a plaintiff must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." <u>Snider v. Dylag</u>, 188 F.3d 51, 53 (2d Cir. 1999); <u>accord</u> <u>Thomas v. City of New York</u>, No. 11 Civ. 0578, 2012 WL 4889257, at *2 (S.D.N.Y. Oct. 16, 2012).

The defendants have moved to dismiss the plaintiff's § 1983 claims, arguing that (1) the plaintiff failed to exhaust his administrative remedies, (2) the constitutional claims are insufficiently pled, and (3) Warden Mingo and Commissioner Ponte were not personally involved in any of the constitutional deprivations.

A.   <u>Administrative Exhaustion</u>

The Prison Litigation Reform Act (the "PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). However, "failure to exhaust

5

is an affirmative defense" and "is not a jurisdictional predicate." Giano v. Goord, 380 F.3d 670, 675 (2d Cir. 2004), abrogated on other grounds by Ross v. Blake, __ U.S. __, 136 S. Ct. 1850 (2016). Thus, it need not be pled with particularity. Lopez v. Cipolini, 136 F. Supp. 3d 570, 580 (S.D.N.Y. 2015). But a complaint may still be dismissed on a Rule 12(b)(6) motion if it is evident from the face of the complaint that administrative procedures were not followed and if none of the exceptions to the procedures are germane. See id. at 581.

Mr. Patterson alleges that he filed grievances for all of his claims[5] and that he appealed those grievances to the Warden. (Compl. at 4; Amend. Compl. at 4). His appeals received no responses. (Compl. at 4). "It is well settled that an inmate who receives no response to his grievance must continue with the next steps in the grievance process." Tyler v. Argo, No. 14 Civ. 2049, 2014 WL 5374248, at *4 (S.D.N.Y. Oct. 10, 2014). However, the pleadings are silent regarding whether Mr. Patterson filed further appeals. Because it is unclear from the face of the Complaint and Amended Complaint whether administrative remedies have been fully exhausted, they should not be dismissed for failure to exhaust.

---

[5] The defendants concede that "the strip search claim is not subject to the IGRP process, as shown by the disposition form." (Memorandum of Law in Support of Defendant's Motion to Dismiss at 6).

See Shaw v. Ortiz, No. 15 Civ. 8964, 2016 WL 7410722, at *5 (S.D.N.Y. Dec. 21, 2016).

    B.   Liberty Interest Claim

    Mr. Patterson alleges that the lockdowns in the facility are excessive because the prison administration "continues to lockdown the entire facility because of violent incidents even after the problem area is secured, located and not in my area." (Compl. at 3). The Second Circuit has stated that "[l]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Benjamin v. Fraser, 264 F.3d 175, 188 (2d Cir. 2001) (quoting Youngberg v. Romeo, 457 U.S. 307, 316 (1982)). However, "a detainee's liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty." Id. "Thus, '[a]bsent a showing of an expressed intent to punish,' courts in this circuit consider whether there is 'an alternative purpose to which [the restriction] may rationally be connected . . . and whether [the restriction] appears excessive in relation to the alternative purpose.'" Williams v. Ramos, No. 13 Civ. 826, 2013 WL 7017674, at *3 (S.D.N.Y. Dec. 23, 2013) (alterations in original) (quoting Benjamin, 264 F.3d at 188).

The plaintiff has not alleged an express intent to punish. See id. Furthermore, he has failed to allege his liberty claim with sufficient specificity: he provided no facts with respect to the length, frequency, or reasons for the lockdowns. Absent such information, the court cannot engage in the requisite balancing of interests. Therefore, the plaintiff's liberty interest claim should be dismissed.

C.   Access to Counsel and to the Court

"[T]he right to counsel and the right to access to the court are interrelated . . . [h]owever, the two rights are not the same." Benjamin, 264 F.3d at 186. "[A]ccess claims . . . concern[] the ability of . . . prisoners to attack their sentences, directly or collaterally, and to challenge the conditions of their confinement. By contrast . . . the Sixth Amendment [confers the] right of a pretrial detainee, in a case brought against him by the state, to utilize counsel in his defense." LaRock v. Amato, No. 12 CV 503, 2013 WL 5466410, at *6 (N.D.N.Y. Sept. 30, 2013) (alterations in original) (quoting Benjamin, 264 F.3d at 186). The plaintiff claims that the lockdowns have restricted access to the court and to counsel, stating specifically that a legal telephone conference was postponed and that a paralegal was denied access to him. (Letter of Trent Patterson filed Feb. 1, 2017 ("2/1/17 Patterson Letter"), at 2-3).

8

    1.   Sixth Amendment

A pre-trial detainee needs "'access to the courts and counsel
. . . to defend against the charges brought against [him].'
Accordingly, the Second Circuit has determined that a pretrial
detainee's Sixth Amendment rights are infringed upon when prison
regulations 'unjustifiably obstruct', 'infringe', 'unreasonably
burden', or 'significantly interfered' with the detainee's access
to counsel." LaRock, 2013 WL 5466410, at *6 (first alteration in
original) (citations omitted) (quoting Benjamin, 264 F.3d at 186-
87). "[E]ven when an institutional restriction infringes a
specific constitutional guarantee . . . the practice must be
evaluated in the light of the central objective of prison
administration, safeguarding institutional security." Bell v.
Wolfish, 441 U.S. 520, 547 (1979).

The plaintiff's allegations fail to show how the postponement
of a single telephone conference and the inability to speak with
a paralegal on a single occasion unreasonably burdened his right
to counsel. See LaRock, 2013 WL 5466410, at *6. The Sixth
Amendment claim should therefore be dismissed.

    2.   Access to the Courts

Mr. Patterson's allegations, liberally construed, suggest a
claim of denial of access to the courts. He claims that he was
unable to file a "440.20/30/10" because his attorney could not

assist him and that his legal mail has been delayed.   (12/28/16 Patterson Letter at 4; 2/1/17 Patterson Letter at 3). Additionally, he asserts that the law library is understaffed, that it is not large enough, and that he has been denied access because of lockdowns.   (Inmate Grievance and Request Program Statement Form dated Sept. 10, 2016, attached as an exhibit to Letter of Trent Patterson filed Sept. 14, 2016).

"To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury." Burroughs v. Petrone, 138 F. Supp. 3d 182, 210 (N.D.N.Y. 2015) (citing Lewis v. Casey, 518 U.S. 343, 353 (1996)).   To establish actual injury, the denial must have hindered the plaintiff's efforts in pursuing a non-frivolous legal claim.   Abreu v. Travers, No. 15 CV 540, 2016 WL 6127510, at *11 (S.D.N.Y. Oct. 20, 2016).   Furthermore,

> the Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint . . . ." The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."

Abreu, 2016 WL 6127510, at *11 (citation omitted) (quoting Christopher v. Harbury, 536 U.S. 403, 415-16 (2002)).

While Mr. Patterson claims that he was unable to file a claim after a lockdown, he does not adequately describe whether a meritorious legal claim was frustrated.  Additionally, he fails to allege that the conduct was deliberate or malicious.  Thus, this claim should be dismissed.

D.   Communication, Visitation, and Mail

The plaintiff alleges that, because of the lockdowns, he has been denied visitation, communication, packages, and mail.  "The right of intimate association 'is among the rights least compatible with incarceration,' which, by definition, requires confinement." Williams, 2013 WL 7017674, at *4 (quoting Overton v. Bazzetta, 539 U.S. 126, 131 (2003)).   An inmate's right to visitation, communication, mail, packages, and telephone calls may be restricted if the restrictions employed are reasonably related to legitimate penological interests -- namely, security.   Overton, 539 U.S. at 132; Thornburgh v. Abbott, 490 U.S. 401, 409, 413 (1989); Burroughs, 138 F. Supp. 3d at 210; Williams, 2013 WL 7017674, at *4; Garraway v. Griffin, No. 12 CV 924, 2013 WL 2105903, at *4 (S.D.N.Y. May 8, 2013).

The plaintiff's allegations are too vague and conclusory to state a claim for relief.  See Burroughs, 138 F. Supp. 3d at 210-11.   He does not describe the length or frequency of the restrictions, nor does he identify with specificity what

11

communications might have been restricted.  These claims, too, should be dismissed.

E. Conditions of Confinement Claims

A pre-trial detainee's conditions of confinement claims are governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, and "[a] detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'"  Darnell v. Pineiro, 849 F.3d 17, 27 (2d Cir. 2017) (quoting City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983)).  Thus, a pre-trial detainee may establish a conditions claim by showing that the defendants acted with deliberate indifference, which requires satisfying both an objective prong and a "mental element prong."  Id.

1. Objective Prong

The objective prong requires that a plaintiff allege "a deprivation that is 'objectively, sufficiently serious' that he was denied 'the minimal civilized measure of life's necessities.'" Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  "[A] prisoner must prove that the conditions of his confinement violate contemporary standards of decency."  Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002).  "[T]he inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious

12

damage to his health." Darnell, 849 F.3d at 31 (quoting Walker v.
Schult, 717 F.3d 119, 125 (2d Cir. 2013)). Thus, "conditions of
confinement may be aggregated to rise to the level of a
constitutional violation, but 'only when they have a mutually
enforcing effect that produces the deprivation of a single,
identifiable human need such as food, warmth, or exercise.'"
Walker, 717 F.3d at 125 (quoting Wilson v. Seiter, 501 U.S. 294,
304 (1991)).   "Although the Constitution does not require
'comfortable' prison conditions, the conditions of confinement may
not 'involve the wanton and unnecessary infliction of pain.'" Id.
(quoting Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)). Each
condition "must be measured by its severity and duration, not the
resulting injury." Darnell, 849 F.3d at 32.

           a.   Showers and Barbershop

     The plaintiff claims he was denied use of the showers and the
barbershop.   A deprivation "must result in the denial of the
minimal civilized measure of life's necessities." Farmer, 511
U.S. at 298.   Indeed, "[t]he failure to provide inmates with
showers during lockdowns has been upheld in cases where the
lockdown itself was not subject to constitutional challenge."
Brooks v. NYC DOC Commissioner, 14 CV 6283, 2016 WL 4530456, at *5
(E.D.N.Y. Aug. 29, 2016) (collecting cases).   Mr. Patterson does
not specify how long he was denied shower access, and therefore

his "threadbare allegation must fail." <u>Banks v. Argo</u>, No. 11 Civ.
4222, 2012 WL 4471585, at *4 (S.D.N.Y. Sept. 25, 2012).  Moreover,
"the claimed denial of ordinary access to a barber, as a matter of
law, fails to amount to the denial of the minimal civilized measure
of life's necessities."  <u>Id.</u>  Therefore, these claims should be
dismissed.

b.   <u>Recreation</u>

The plaintiff claims that facility personnel denied him
recreation time because of lockdowns and lack of staffing.  (Compl.
at 3; 9/17/16 Grievance).  Exercise is a basic human need protected
by the Eighth Amendment (and necessarily by the Fourteenth
Amendment as well).  <u>See</u> <u>Wilson</u>, 501 U.S. at 304-05; <u>Williams v.
Greifinger</u>, 97 F.3d 699, 704 (2d Cir. 1996).  While "[d]eprivations
of exercise must be limited to unusual circumstances or situations
where restrictions are needed for disciplinary reasons . . . [,]
[s]poradic infringement of the right to exercise does not rise to
the level of to a constitutional deprivation." <u>Gamble v. City of
New York ex rel. NYC Department of Correction</u>, No. 04 Civ. 10203,
2009 WL 3097239, at *4-5 (S.D.N.Y. Sept. 25, 2009).  The plaintiff
claims only occasional restrictions on recreation and fails to
allege facts showing that the restriction resulted in a severe
deprivation.  Therefore, this claim should be dismissed.

c.   Television and Commissary

There is no constitutional right to the use of a television or a commissary.   Montalvo v. Lamy, 139 F. Supp. 3d 597, 606 (W.D.N.Y. 2015); LaRock, 2013 WL 5466410, at *10.   The plaintiff here has not alleged that the lack of either has resulted in the loss of life's necessities.   These claims should be dismissed.

d.   Denial of Timely Medication and Sick Call

The plaintiff alleges that he was denied sick call because of the lockdowns and because of understaffing.   (Compl. at 3; 9/17/16 Grievance).   To determine whether allegations of inadequate medical care are sufficient under the objective prong, a court must decide "first, if 'the prisoner was actually deprived of adequate medical care' and, second, 'whether the inadequacy in medical care is "sufficiently serious."'"   Howard v. City of New York, Nos. 12 Civ. 4069 et al., 2012 WL 7050623, at *6 (S.D.N.Y. Dec. 20, 2012) (quoting Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006)).   The deprivation must be sufficiently serious "such that the medical condition might have produced 'death, degeneration, or extreme pain.'"   Mena v. City of New York, No. 13 Civ. 2430, 2014 WL 4652570, at *6 (S.D.N.Y. Sept. 18, 2014) (quoting Jones v. Vives, 523 F. App'x 48, 49 (2d Cir. 2013)).   In determining the seriousness of a medical condition, district courts consider:

15

> (1) the "existence of an injury that a reasonable doctor
> or patient would find important and worthy of comment or
> treatment"; (2) "the presence of a medical condition
> that significantly affects an individual's daily
> activities"; (3) "the existence of chronic and
> substantial pain"; and (4) "adverse medical effects or
> demonstrable physical injury."

Ferguson v. Cai, No. 11 Civ. 6181, 2012 WL 2865474, at *3 (S.D.N.Y. July 12, 2012) (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), and Smith v. Carpenter, 316 F.3d 178, 187 (2d Cir. 2003)).

The plaintiff states that because of the lockdowns he has sometimes been denied insulin, which places his "life in imminent danger." (12/29/16 Patterson Letter at 4). He also states that he is "on a lot of medications for a lot of reasons, and anytime [he is] denied medical care [his] life is in imminent danger." (2/1/17 Patterson Letter at 2). He further asserts that he has not been able to visit a dentist about a tooth that is decaying. (9/17/16 Grievance). However, the plaintiff does not allege sufficient facts describing the length or frequency of the delays, nor does he identify the effects that the delays have had on him. Therefore, those claims should be dismissed.[6]

---

[6] The plaintiff is a party in an action in the District Court for the Eastern District of New York concerning diabetic care. Complaint, Jeffers v. City of New York, No. 14 CV 6173 (E.D.N.Y. Oct. 14, 2014). However, that case chiefly concerns diabetic meals and the timing of insulin shots. See id. Here, Mr. Patterson complains of not being called for sick call or insulin shots at all as a result of understaffing and lockdowns.

        e.  <u>Mattress Claim</u>

     To succeed on a claim involving an alleged deficient bed, a
plaintiff must allege that "the plaintiff had a medical condition
requiring a non-standard bed to protect against serious damage to
his future health" or "that the medical condition was itself
created by an inadequate bed or mattress . . . ." <u>Youmans v.
Schriro</u>, No. 12 Civ. 3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec.
3, 2013).

     The plaintiff alleges that his mattress is "unfit for human
usage, and causes extreme hip, back, and leg pain." (Compl. at
3). These naked assertions "fail to provide the factual detail
necessary to allege plausibly that [he] suffered the injuries as
a result of the bed[]." <u>Howard</u>, 2012 WL 7050623, at *4. There is
also insufficient detail about how the bed could cause injury.
Therefore, this claim should be dismissed.

        2.  <u>Mental Element Prong</u>

     The Second Circuit in <u>Darnell</u> recently reevaluated the
standard for the subjective prong, stating,

        [T]o establish a claim for deliberate indifference to
        conditions of confinement under the Due Process Clause
        of the Fourteenth Amendment, the pretrial detainee must
        prove that the defendant-official acted intentionally to
        impose the alleged condition, or recklessly failed to
        act with reasonable care to mitigate the risk that the
        condition posed to the pretrial detainee even though the
        defendant-official knew, or should have known, that the
        condition posed an excessive risk to health or safety.
        In other words, the "subjective prong" (or "<u>mens</u> <u>rea</u>

                                17

prong") of a deliberate indifference claim is defined objectively.

849 F.3d at 35.

Here, the plaintiff states that the defendants are "aware of and responsible for" the deprivations he complains of. (Compl. at 3). He states that his grievances should have made them aware. (2/1/17 Patterson Letter at 4). He further claims that the defendants are "daily notified of all the conditions existing in the facility, and the Warden routinely tours the facility several times a week." (12/28/16 Patterson Letter at 6-7). Even under the more liberal standard announced in Darnell, these meager allegations are insufficient to show how any specific defendant would have known about the alleged conditions. Therefore, the conditions of confinement claims should be dismissed.

F.   Loss of Property, Religious Exercise, and Warm Clothes

In other submissions, the plaintiff appears to complain of lost property, undue restriction on exercise of religion, and denial of warm clothing. (Inmate Grievance and Program Request Form dated Dec. 13, 2016, attached as an exhibit to Letter of Trent Patterson filed Dec. 19, 2016; 12/28/16 Patterson Letter at 4; 2/1/17 Patterson Letter at 2). While a court may rely on the opposition papers of a pro se litigant to supplement allegations in the complaint, "[e]ntirely new claims [] are not given such liberal treatment." Vlad-Berindan v. MTA New York City Transit,

18

No. 14 Civ. 675, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014) (alterations in original) (quoting Rosado v. Herad, No. 12 Civ. 8943, 2013 WL 6170631, at *3 (S.D.N.Y. Nov. 25, 2013)).  These allegations therefore should not be considered.

     G.   Search Claim

        1.   Fourth Amendment

"[I]nmates retain a limited right to bodily privacy under the Fourth Amendment." Harris v. Miller, 818 F.3d 49, 57 (2d Cir. 2016).   Thus, while an inmate's constitutional rights are necessarily restricted, a strip search must still be conducted in a reasonable manner. Green v. Martin, __ F. Supp. 3d __, __, 2016 WL 7230500, at *4 (S.D.N.Y. 2016); Holland v. City of New York, 197 F. Supp. 3d 529, 542 (S.D.N.Y. 2016).  To state a claim for an unreasonable strip search, "[a] plaintiff must allege facts that suggest the[] search[] did not serve any legitimate penological purposes, or that each search was specifically 'designed to intimidate, harass[,] or punish.'" Green, __ F. Supp. 3d at __, 2016 WL 7230500, at *5 (quoting Davila v. Messier, No. 13 CV 81, 2014 WL 4638854, at *6 (D. Conn. Sept. 17, 2014)).  Alternatively, a search may be unreasonable if it is conducted in an unreasonable manner, is particularly invasive, or is unnecessarily humiliating. Id.  "Generally, strip searches have been upheld as a reasonable security measure within a correctional facility even in the absence

of probable cause as long as they are related to a legitimate penological goal." Smith v. City of New York, No. 14 Civ. 5934, 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (quoting Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006)). "[I]t is not unreasonable for prison officials to perform routine random strip searches on prison inmates." Edwards v. Horn, No. 10 Civ. 6194, 2012 WL 760172, at *9 (S.D.N.Y. March 8, 2012) (quoting N.G. v. Connecticut, 382 F.3d 225, 230-32 (2d Cir. 2004)).

While the grabbing of an inmate's buttocks may be unreasonable where a plaintiff pleads that it served no penological purpose or where it was motivated by sexual desire, the plaintiff here has not provided enough facts to infer that this unwanted touching was motivated by an illegitimate purpose or that the conduct was unreasonable. See Peek v. City of New York, No. 13 Civ. 4488, 2014 WL 4160229, at *2 (S.D.N.Y. Aug. 18, 2014); Castro-Sanchez v. N.Y.S. Department of Correctional Services, No. 10 Civ. 8314, 2012 WL 4474154, at *3 (S.D.N.Y. Sept. 28, 2012). Similarly, while forcing an inmate to perform multiple squats could be unreasonable in some circumstances, the plaintiff here has not sufficiently pled that the conduct here served no penological goal or was motivated by an illegitimate purpose. Mr. Patterson has also not pled facts showing that the second search was conducted unreasonably. Finally, he proffers no facts from which it could

be inferred that it was unreasonable to search him in the pantry area.  The plaintiff's Fourth Amendment claim should therefore be dismissed.

2.   Sexual Assault Claim

The plaintiff claims that the strip search constituted a sexual assault.  "Because sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind," such allegations are cognizable as Fourteenth Amendment conditions of confinement claims.  Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997). Thus, the conduct must be objectively serious and the prison official must have a "sufficiently culpable state of mind."  Id. Objectively, "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment."  Crawford v. Cuomo, 796 F.3d 252, 257 (2d Cir. 2015).  With respect to the mental element prong, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  Kingsley v. Hendrickson, __ U.S. __, __, 135 S. Ct. 2466, 2473 (2015).

In Boddie, the Second Circuit held that the plaintiff "failed to state an Eighth Amendment claim after a female corrections

officer made a pass at an him, squeezed his hand, touched his penis, called him a 'sexy black devil,' and bumped into him 'with her whole body vagina against penis.'" <u>Crawford</u>, 796 F.3d at 257 (quoting <u>Boddie</u>, 105 F.3d at 859-60). In <u>Castro-Sanchez</u>, the court held that "[t]he groping of [the inmate's] buttocks during a single strip search is far less egregious than the conduct alleged in <u>Boddie</u>. Since the conduct described in <u>Boddie</u> was insufficient to constitute a violation of a prisoner's Eighth Amendment rights, a fortiori the conduct alleged by [the plaintiff] is insufficient." 2012 WL 4474154, at *3.

The plaintiff here does not allege sufficient facts showing that the conduct was unreasonable or objectively serious, and therefore his allegations are insufficient to state a claim. <u>See</u> <u>Vaughn v. Strickland</u>, Nos. 12 Civ. 2696 <u>et al.</u>, 2013 WL 3481413, at *3 (S.D.N.Y. July 11, 2013); <u>Castro-Sanchez</u>, 2012 WL 4474154, at *3; <u>LaRocco v. N.Y.C. Department of Corrections</u>, No. 99 Civ. 9759, 2001 WL 1029044, at *5 (S.D.N.Y. Aug. 31, 2001). Therefore, this claim should be dismissed.[7]

---

[7] Because the plaintiff's constitutional allegations are insufficiently pled, I need not reach the issue of whether the plaintiff has adequately stated that Commissioner Ponte and Warden Mingo were personally involved in the conduct.

22

H.   <u>Leave to Amend</u>

"[A] pro se litigant should be afforded at least one opportunity to 'amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint [will] succeed in stating a claim.'"   <u>Ford v. City of New York</u>, No. 15 Civ. 7598, 2016 WL 4990258, at *5 (S.D.N.Y. Aug. 26, 2016) (second alteration in original) (quoting <u>Gomez v. USAA Federal Savings Bank</u>, 171 F.3d 794, 796 (2d Cir. 1990) (per curiam)).  Mr. Patterson has not yet been given that chance, and he should therefore be permitted to amend his complaint, consistent with this Report and Recommendation.

<u>Conclusion</u>

For the reasons discussed above, I recommend that the defendants' motion be granted.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Paul A. Engelmayer, Room 2201, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, Room 1960, 500 Pearl

Street, New York, New York 10007.   Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          March 30, 2017


Copies transmitted this date to:

Trent Patterson
8951501746
Rikers Island-A.M.K.C.
18-18 Hazen Street
E. Elmhurst, NY 11370

Elizabeth C. DeGori, Esq.
Ben Kuruvilla, Esq.
New York City Law Department
100 Church St.
New York, NY 10007

24