UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------:
TRENT PATTERSON,                    :   16 Civ. 3156 (PAE) (JCF)
                                    :
            Plaintiff,              :       REPORT AND
                                    :     RECOMMENDATION
    - against -                     :
                                    :
JOSEPH PONTE (Commissioner) D.O.C., :
MAXOLINE MINGO (Warden AMKC/Chief), :
CAPTAIN TIMOTHY JOHNSON, and C.O.   :
JUNIOR LEWIS,                       :
                                    :
            Defendants.             :
------------------------------------:

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/29/17

TO THE HONORABLE PAUL A. ENGLEMAYER, U.S.D.J.:

Trent Patterson brings this action pursuant to 42 U.S.C. § 1983 against Joseph Ponte, Commissioner of the New York City Department of Correction; Maxolaine Mingo, warden of the Anna M. Kross Center ("AMKC"); Captain Timothy Johnson; and Correctional Officer Junior Lewis. On April 17, 2017, his original Complaint and first Amended Complaint were dismissed without prejudice to his filing an amended complaint. He has filed a second and third Amended Complaint, which the defendants move to dismiss. For the reasons that follow, I recommend that the motion be granted in part and denied in part.

Background

The factual background has already been summarized in my previous Report and Recommendation. See Patterson v. Ponte, No. 16 Civ. 3156, 2017 WL 1194489, at *1-2 (S.D.N.Y. March 30, 2017). I provide only a brief recitation of the facts here.

1

Mr. Patterson is detained at the AMKC.[1] Id. at *1. He alleges in all iterations of his complaint that he has been "denied visits, counsel visits, law library, mail, packages, social service legal aid, timely medication, recreation, phone, commissary, showers, t.v., sick call, and barbershop" because of lockdowns and understaffing at the facility. Id. He asserts that he went a month without recreation. (7/3/17 Patterson Letter at 8, 10).[2] He also alleges that his mattress is unsuitable and that correctional officers sexually assaulted him. Patterson, 2017 WL 1194489, at *1.

In his second and third amended complaints, Mr. Patterson alleges that on February 20, 2017, he was physically assaulted by Captain Johnson and that on February 22, 2017, (1) his cane was taken away, (2) he was threatened by Captain Johnson, and (3) he was "kicked out" of the medical clinic. ([Second] Amended Complaint ("2d Amend. Compl.") at 4; [Third] Amended Complaint

---

[1] I previously treated Mr. Patterson as a pretrial detainee because his detainee status was not clear from the parties' submissions. He states in an opposition letter that he has been sentenced (Letter of Trent Patterson dated July 3, 2017 ("7/3/17 Patterson Letter"), at 8 (because the letter is not properly paginated, the page numbers I refer to are from the Court's Electronic Case Filing system)), but he does not clarify what his status was at the time of the incidents. I will therefore continue to treat him as a pretrial detainee for purposes of the defendants' motion.

[2] The plaintiff's pages here appear to be out of order, as the sentence from page eight continues on page ten, not page nine.

("3d Amend. Compl.") at 4-5). He alleges that he has back, hip, side, and leg pain due to the mattress and assaults. (2d Amend. Compl. at 5; 3d Amend. Compl. at 4). He states in an opposition letter that the alleged assault was retaliation for filing grievances. (7/3/17 Patterson Letter at 3). He alleges that Warden Mingo and Commissioner Ponte were notified of the incidents. (7/3/17 Patterson Letter at 4).

Discussion

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court's charge in ruling on a 12(b)(6) motion to dismiss "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004)). The court must construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

3

This standard applies equally to pro se plaintiffs, but their pleadings are read more liberally and are construed as raising the strongest claims implied. See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). The court may also consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." Martinez v. Aycock-West, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting Alsaifullah v. Furco, No. 12 Civ. 2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)).

To plead a claim properly under § 1983, a plaintiff must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999); Thomas v. City of New York, No. 11 Civ. 578, 2012 WL 4889257, at *2 (S.D.N.Y. Oct. 16, 2012). The defendants have moved to dismiss the second and third amended complaints, arguing that the plaintiff has failed to state a claim under § 1983 and that Warden Mingo and Commissioner Ponte were not personally involved in the alleged conduct.

Discussion

    A.    Liberty Interest Claim

Mr. Patterson alleges that lockdowns at the facility are excessive, which can be construed as a claim of deprivation of a

4

liberty interest. I previously recommended dismissing this claim because the plaintiff failed to allege an intent to punish and did not plead the claim with sufficient specificity. Patterson, 2017 WL 1194489, at *3. He has not alleged any new facts that cure those issues. I therefore recommend dismissing this claim.

B. Access to the Courts and to Counsel

Mr. Patterson also alleges a Sixth Amendment claim for denial of access to counsel as well as a First Amendment claim for denial of access to the courts.

"[A] pretrial detainee's Sixth Amendment rights are infringed upon when prison regulations 'unjustifiably obstruct', 'infringe', 'unreasonably burden', or 'significantly interfere[]' with the detainee's access to counsel." LaRock v. Amato, No. 12 CV 503, 2013 WL 5466410, at *6 (N.D.N.Y. Sept. 30, 2013) (quoting Benjamin v. Fraser, 264 F.3d 175, 187 (2d Cir. 2001)). "[E]ven when an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979). Mr. Patterson's allegations relating to access to counsel (7/3/17 Patterson Letter at 6) are insufficient because they "fail to indicate what counsel he was denied access to and for what purpose the counsel was involved, when his requests were made and how they were handled, or how the defendants' proffered policy

5

obstructed, interfered, unreasonably burdened or infringed upon his Sixth Amendment rights." LaRock, 2013 WL 5466410, at *6.

"To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately and maliciously, and (2) the plaintiff suffered an actual injury." Burroughs v. Petrone, 138 F. Supp. 3d 182, 210 (N.D.N.Y. 2015) (citing Lewis v. Casey, 518 U.S. 343, 353 (1996)). To establish actual injury, the denial must have hindered the plaintiff's efforts in pursuing a nonfrivolous legal claim. Abreu v. Travers, No. 15 Civ. 540, 2016 WL 6127510, at *11 (S.D.N.Y. Oct. 20, 2016). Furthermore,

> the Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint. . . ." The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."

Id. (citation omitted) (quoting Christopher v. Harbury, 536 U.S. 403, 415-16 (2002)). Mr. Patterson asserts that the lockdowns prevented him "from responding to a motion to dismiss by 6/26/17 in the Eastern District because [he] couldn't get to the legal aid or law library to research properly." (7/3/17 Patterson Letter at 6). He also claims that he could not submit a "440.10, 20 for [his] criminal case." (7/3/17 Patterson Letter at 6). The plaintiff fails to allege that the conduct was deliberate and

6

malicious and fails to adequately describe a frustrated, meritorious legal claim. I therefore recommend dismissing this claim.

### C. Communication, Conditions of Confinement, and Sexual Assault Claims

The plaintiff's claims relating to visitation, communication, packages, mail, showers, barbershop, television, commissary, mattresses, medication, sick call, and sexual assault were previously denied without prejudice to amendment. Patterson v. Ponte, No. 16 Civ. 3156, 2017 WL 1405753, at *1-2 (S.D.N.Y. April 17, 2017). Mr. Patterson has alleged no new facts relating to those claims. Therefore, I recommend denying them for the same reasons discussed in my previous Report and Recommendation. See Patterson, 2017 WL 1194489, at *4-8.

Mr. Patterson's claim for denial of recreation is now somewhat more substantial. He claims "[t]here is absolutely no recreation allowed while these lockdowns occur whether it's for one day or one month. This is especially dangerous for diabetics . . . ." (7/3/17 Patterson Letter at 8, 10). But this allegation is not specific enough because it is impossible to determine how often the denial occurred and for how long. I therefore recommend dismissing this claim.

### D. Religious Exercise and Retaliation Claims

Mr. Patterson, in his answering papers, appears to allege a

claim relating to religious exercise. (7/3/17 Patterson Letter at 8 ("As a practicing Muslim I'm required to make ghusl and wudu before prayer. The denial of showers is clearly unconstitutional.")). He also appears to allege a First Amendment retaliation claim in his opposition letter. (7/3/17 Patterson Letter at 3 ("Captain Timothy Johnson assaulted plaintiff on 2/20/17 as a retaliatory act for the previous grievances, 311, I.G., I.D. and lawsuits and complaints plaintiff filed against him.")). A court need not recognize claims raised for the first time in opposition papers. Vlad-Berindan v. MTA New York City Transit, No. 14 Civ. 675, 2014 WL 6982929, at *6 (S.D.N.Y. Dec. 10, 2014). I therefore do not consider these allegations.

    E.    Excessive Force Claim

Mr. Patterson claims that on February 20, 2017, he was assaulted by Captain Johnson, which can be construed as an excessive force claim. "[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." Perez v. Ponte, 236 F. Supp. 3d 590, 620 (E.D.N.Y. 2017) (quoting United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999)).

> Traditionally, pre-trial detainees seeking to assert an excessive force claim had to satisfy both an objective and subjective requirement. Generally, a plaintiff was required to assert facts showing that a defendant had a sufficiently culpable state of mind (subjective requirement) and that the deprivation being alleged was

8

sufficiently serious or harmful enough (objective requirement).

Perez, 236 F. Supp. 3d at 620 (citation omitted). "In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be 'inconsistent with the contemporary standards of decency.'" Pine v. Seally, No. 09 CV 1198, 2011 WL 856426, at *5 (N.D.N.Y. Feb. 4, 2011) (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)). It follows that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000) (alteration in original) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). Likewise,

> [t]he subjective component of the claim requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness'" in light of the particular circumstances surrounding the challenged conduct. In an excessive-force case, "whether conduct was 'wanton' turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

Id. at 21 (citations omitted) (first quoting Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999), then quoting Hudson v. McMillian, 503 U.S. 1, 6 (1992)).

The Supreme Court has recently reevaluated this standard and determined that a pre-trial detainee need not show "proof of intent (or motive) to punish . . . to prevail on a claim that his due

9

process rights were violated." Kingsley v. Hendrickson, __ U.S. __, __, 135 S. Ct. 2466, 2473 (2015). Rather, "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Id. at __, 135 S. Ct. at 2473-74. Accordingly, "the appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." Id. at __, 135 S. Ct. at 2473. The Court reasoned that this standard "is workable" and that "use of an objective standard adequately protects an officer who acts in good faith." Id. at __, 135 S. Ct. at 2474. However, the Court cautioned that

> Officers facing disturbances "are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." For these reasons, we have stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer. We have also explained that a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate.

Id. (citation omitted) (quoting Graham v. Connor, 490 U.S. 386, 397 (1984)). In addition, Kingsley limited liability for claims based upon excessive force to situations "in which the use of force was the result of an intentional and knowing act (though we leave open the possibility of including a 'reckless' act as well)." Id.

10

Factors a court should consider include

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. at __, 135 S. Ct. at 2473.

Mr. Patterson has satisfied this standard. He states that he was "assaulted by Captain Johnson" and "thrown to the floor, kicked, spit on, and dragged." (3d Amend. Compl. at 4-5). He states that he suffered "excruciating" pain and now has back, hip, and leg pain due, in part, to the incident. (2d Amend. Compl. at 5). He further asserts that the assault was "a retaliatory act for the previous grievances . . . and lawsuits and complaints plaintiff filed against [Captain Johnson]." (7/3/17 Patterson Letter at 3). The plaintiff has therefore alleged sufficient facts to make out an excessive force claim against Captain Johnson because he plausibly alleges that the use of force was entirely gratuitous and severe and caused significant injury. See Banks v. County of Westchester, 168 F. Supp. 3d 682, 689-90 (S.D.N.Y. 2016).

However, the plaintiff does not make out an excessive force claim against the other defendants. He does not allege that they were involved, and does not allege with sufficient specificity that they were aware of the incident. The plaintiff only alleges that he "notified" Warden Mingo and Commissioner Ponte of the

11

behavior (7/3/17 Patterson Letter at 4); he fails to state how these defendants were notified, how they would have been made aware of the incident, or how they were personally involved.

In addition, the plaintiff does not make out an excessive force claim for the February 22, 2017 incident when he was threatened and his cane was taken away, because the claim does not rise to the level of a sufficiently severe constitutional deprivation. See Banks, 168 F. Supp. 3d at 691.

Conclusion

For the reasons discussed above, I recommend that the defendants' motion be denied as to the plaintiff's February 20, 2017 excessive force claim against Captain Johnson and granted in all other respects. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Paul A. Engelmayer, Room 2201, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

/s/ James C. Francis IV
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
September 29, 2017

Copies transmitted this date to:

Trent Patterson
8951501746
Rikers Island-A.M.K.C.
18-18 Hazen Street
E. Elmhurst, NY 11370

Elizabeth C. DeGori, Esq.
Ben Kuruvilla, Esq.
Nicholas Daniel Manningham, Esq.
New York City Law Department
100 Church St.
New York, NY 10007